IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MELODY A. MAY,                          :

    Plaintiff,                       :
                                                    Case No. 3:03cv293
    vs.                              :
                                         JUDGE WALTER HERBERT RICE

CITY OF SPRINGFIELD, et al.,            :

    Defendants.                      :

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DOC. #8); DECISION AND ENTRY
SUSTAINING DEFENDANTS' MOTION FOR LEAVE OF COURT TO
SUBMIT ADDITIONAL AUTHORITY (DOC. #15); JUDGMENT TO BE
ENTERED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF,
DISMISSING HER FEDERAL CLAIMS WITH PREJUDICE AND HER
STATE LAW CLAIMS WITHOUT PREJUDICE; TERMINATION ENTRY

       This litigation arises out of incidents that occurred during the late hours of December 15, 2001, and the early hours of the following day.[1] Plaintiff Melody May ("May" or "Plaintiff") spent the evening of December 15th in the Night Owl Bar in Springfield, Ohio, where she consumed several alcoholic beverages over the period of four to five hours. While at the Night Owl Bar, May met an acquaintance who told her that earlier that day her (Plaintiff's) boyfriend, James Hatter

---

[1] Since this case comes before the Court on the Defendants' Motion for Summary Judgment (Doc. #8), the Court sets forth the facts in the manner most favorable to the Plaintiff.

("Hatter"), had been seen with another woman.  At approximately 11:30 p.m., the acquaintance drove May to 119-119½ East Grand Avenue in Springfield, where she discovered Hatter's truck parked in the rear.

Seeing Hatter's truck parked at that location caused May to conclude that Hatter was inside those premises with another woman and to become very angry.  As a result of her anger, May began to vandalize Hatter's truck, by breaking off both exterior mirrors, bending a windshield wiper and kicking dents in the passenger's side door.  She then got back into the vehicle her acquaintance was driving, and the two drove around the block a few times.  When May saw Hatter outside 119-119½ East Grand Avenue, she got out of the automobile and confronted him.  The two then got into a heated argument.

As a result of the incidents that had occurred on East Grand Avenue, Defendants David Emmel ("Emmel") and Geoffrey Ashworth ("Ashworth"), police officers employed by Defendant City of Springfield, were dispatched to that location.  Ashworth ultimately placed the Plaintiff in handcuffs, while she was standing near Hatter's truck.  Nevertheless, Ashworth had not completely restrained her.  After they had stood together for a couple of minutes, May's anger caused her to kick the truck again, after which she stepped back from it.  May testified during her deposition that Ashworth then grabbed her by the side of the shirt, slammed her down to the ground and jerked her back up again.  May Dep. at 24.  While that was occurring, Emmel was, according to Plaintiff' deposition, standing next to Hatter, four to five feet away.  Id. at 25.  As Plaintiff now concedes, the actions of Emmel, rather than those of Ashworth, caused her to be thrown to the ground.  In actuality, it is not currently contested that, after Plaintiff

had kicked Hatter's truck and stepped back. Emmel, who had been talking to Hatter, executed what Defendants term, a "leg sweep" on Plaintiff, whereby he placed his right leg in front of her legs while shoving her from behind, thus causing her to fall face first onto the gravel on the pavement.[2] As a consequence, the Plaintiff suffered serious injuries, including having gravel imbedded in her face and gums.[3] Subsequently, Emmel was disciplined by Springfield for conduct unbecoming an officer and for violating the policy of its Police Department concerning the use of force, resulting in a 10-day suspension without pay.

In her Complaint (Doc. #1), Plaintiff sets forth claims under state and federal law against Emmel, Ashworth and Springfield, with which she seeks to recover compensation for the physical and emotional injuries she suffered as a result of Emmel's actions.[4] This case is now before the Court on the Defendants' Motion for Summary Judgment (Doc. #8).[5] As a means of analysis, the Court will initially set forth the standards it must apply whenever it rules on a motion for summary judgment, following which it will turn to the parties' arguments in support of and in opposition to the instant such motion.

---

[2]Plaintiff questions whether what Emmel did to her was really a leg sweep. Regardless of the term used to define the maneuver, she has not presented evidence that Emmel did something other than cause her to fall by placing his right leg in front of her legs while shoving her from behind.

[3]After Plaintiff had fallen face first on the ground, paramedics were summoned. They transported her to a hospital, where she received treatment.

[4]The Plaintiff initially also set forth claims against the Springfield Police Department; however, she has dismissed those claims. See Doc. #4.

[5]Defendants' Motion for Leave of Court to Submit Additional Authority (Doc. #15) is also pending. The Court sustains that motion and has considered that additional authority, Brosseau v. Haugen, 125 S.Ct. 596 (2005), when ruling upon their request for summary judgment.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323.  See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50).  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff.").  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Summary judgment shall be denied "[i]f there are … 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).  Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party.  Anderson, 477 U.S. at 255 (emphasis added).  If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder.  10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726.  In ruling on a

motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990).  See also L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ….").  Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

With Defendants' Motion (Doc. #8), Emmel, Ashworth and Springfield seek summary judgment on Plaintiff's claim under § 1983, without mentioning her state law claims.  The Court need not discuss the request for summary judgment of Ashworth and Springfield, since the Plaintiff now concedes that those Defendants are entitled to summary judgment.  See Doc. #10 at 10.  Accordingly, the Court sustains the Defendants' Motion for Summary Judgment (Doc. #8), as it relates to Plaintiff's federal law claims against Ashworth and Springfield, and turns to the parties' arguments in support of and in opposition to Emmel's request for summary judgment on her federal law claim against him.

Emmel argues that he is entitled to summary judgment on Plaintiff's federal law claim under 42 U.S.C. § 1983, which is predicated upon his alleged use of excessive force in violation of the Fourth Amendment to the United States Constitution.[6]  In particular, Emmel relies upon the defense of qualified immunity. It is axiomatic that analysis of that defense involves a two-step process.  Saucier v. Katz, 533 U.S. 194 (2001).  A court must first resolve "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry.  Siegert v. Gilley, 500 U.S. 226, 232 (1991)."  Id. at 201.  If the facts do show that the officer's conduct violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established."[7]  Id.  See also, Myers v. Potter, — F.3d —, 2005 WL 2138543 (6th Cir. Sept. 7, 2005).  As a means of analysis, the Court initially turns to the question of whether, construing the evidence in the manner most favorable to the Plaintiff, Emmel violated her right to be free from unreasonable seizures by using the leg sweep on her.  In other

---

[6]In her Complaint (Doc. #1), Plaintiff bases her § 1983 claim upon the assertion that Emmel's actions violated her rights under the Fourteenth Amendment.  It bears emphasis, however, that the Supreme Court has held that the alleged use of excessive force in the context of a seizure must be analyzed under the specific strictures of the Fourth Amendment, rather than under the Fourteenth Amendment. Graham v. Connor, 490 U.S. 386 (1989).  However, in their memoranda, the parties have analyzed May's federal claim against Emmel as arising under the Fourth Amendment, and the Court will do so as well.  If the Court concludes that the Plaintiff's § 1983 claim survives Emmel's request for summary judgment, it will require that she amend her Complaint in order to allege that the officer's actions violated the Fourth Amendment.  Cf. Fed. R. Civ. P. 15(b) (permitting post-trial amendments to conform to the evidence).

[7]Of course, if the facts do not establish a constitutional violation, there is no need to consider whether the right was clearly established.

- 7 -

words, the Court must decide whether the evidence raises a genuine issue that he used excessive force to seize her in violation of the Fourth Amendment.

In <u>Graham v. Connor</u>, 490 U.S. 386 (1989), the Supreme Court set forth the standard which governs all claims of excessive force under the Fourth Amendment:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. [<u>Tennessee v. Garner</u>, 471 U.S. 1, 8 (1985)], quoting <u>United States v. Place</u>, 462 U.S. 696, 703 (1983). Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. See <u>Terry v. Ohio</u>, 392 U.S.[1, 22-27 (1968)]. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," <u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. See <u>Tennessee v. Garner</u>, 471 U.S., at 8-9 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").
>
> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. See <u>Terry v. Ohio</u>, <u>supra</u>, 392 U.S., at 20-22. The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, <u>Hill v. California</u>, 401 U.S. 797 (1971), nor by the mistaken execution of a valid search warrant on the wrong premises, <u>Maryland v. Garrison</u>, 480 U.S. 79 (1987). With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," <u>Johnson v. Glick</u>, 481 F.2d[120, 1033 (2d Cir., <u>cert</u>. <u>denied</u>, 414 U.S. 1033 (1973)], violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the

>question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. See Scott v. United States, 436 U.S. 128, 137-139 (1978); see also Terry v. Ohio, supra, 392 U.S., at 21 (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard"). An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. See Scott v. United States, supra, 436 U.S., citing United States v. Robinson, 414 U.S. 218 (1973).

Id. at 396-97.

Herein, construing the evidence in the manner most favorable to the Plaintiff, the Court concludes that the evidence raises a genuine issue of material fact as to whether Emmel's use of force against Plaintiff was excessive in violation of the Fourth Amendment. Plaintiff was handcuffed when Emmel placed his right leg in front of her legs and shoved her, from her back, face first into the gravel on the ground. The only criminal offense she had committed that night was damaging Hatter's truck. There is no evidence that she posed an immediate threat to the officer or any other person. Although May did continue to pose a threat to Hatter's truck, given that she had just kicked it again, this Court cannot conclude, as a matter of law, that an officer may constitutionally shove a handcuffed person, face first, into gravel on the pavement, in order to prevent her from continuing to kick the side of a vehicle. Moreover, the Court notes that the officers of the Springfield Police Department, who investigated Emmel's use of force against May, concluded that it had been unreasonable and that such actions had violated the Department's use of force policy. Accordingly, the Court turns to the second step of the qualified immunity analysis, to determine if the constitutional right was clearly established.

In <u>Sample v. Bailey</u>, 409 F.3d 689 (6th Cir. 2005), the Sixth Circuit restated the principles to be applied when ascertaining whether a right has been clearly established:

> Having established that there was a constitutional violation, we turn to the second step of the qualified immunity analysis--whether the constitutional right at issue was clearly established.  "If the law at that time was not clearly established, an official could not … fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."  Harlow [v. Fitzgerald, 457 U.S. 800, 818 (1982)].  The constitutional right cannot simply be a general prohibition, but rather "the right the official is alleged to have violated must have been clearly established in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).  The Court noted that "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  <u>Id</u>. (internal citation omitted).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001).

<u>Id</u>. at 6.  In <u>Saucier</u>, <u>supra</u>, the United States Supreme Court held that, although <u>Graham</u> had clearly established the broad constitutional proposition that the use of objectively unreasonable force violated the Fourth Amendment, that broad proposition did not establish that every use of such force was clearly established in the requisite particularized manner.  533 U.S. at 201-02.  <u>See</u> <u>also</u>, <u>Brosseau v. Haugen</u>, 125 S.Ct. 596, 599 (2004) (noting that <u>Graham</u> was "cast at a high level of generality").

In a number of decisions, courts have held that an officer violates a plaintiff's clearly established Fourth Amendment right to be free from the use of excessive force, when the officer uses force against the plaintiff for no reason

whatsoever.  Other courts have reached a similar result under similar circumstances.  For instance, in Clash v. Beatty, 77 F.3d 1045 (7th Cir.1996), the plaintiff had been handcuffed and was not resisting officers in any manner, when they gave him a "wholly gratuitous" shove that broke his knee.  Id. at 1048.  After the District Court had overruled defendants' request for summary judgment on the basis of qualified immunity, they brought an interlocutory appeal.  The Seventh Circuit affirmed, noting that it was clearly established "that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever."  Id.  See also, Rivas v. City of Passaic, 365 F.3d 181 (3d Cir. 2004) (affirming denial of summary judgment on the basis of qualified immunity to officers, because evidence raised a genuine issue of material fact as to whether they had continued to use force on the plaintiff after he had been bound hand and foot); Jones v. Buchanan, 325 F.3d 520 (4th Cir. 2003) (reversing grant of summary judgment to officer on the basis of qualified immunity, because evidence raised a genuine issue of material fact as to whether he had used force against plaintiff, even though his hands were handcuffed behind his back and he was in a locked room in the jail, merely because the plaintiff had used profanity).

Those decisions are distinguishable, however, because Emmel's use of force was not without any reason whatsoever, and the Plaintiff was not completely retrained when he used force against her.  Immediately before Emmel took Plaintiff to the pavement, she had resumed her vandalism of Hatter's truck by kicking it.  Thus, Emmel had a reason for his actions, to wit: preventing Plaintiff from continuing to damage Hatter's truck.  Moreover, Plaintiff's ability to resume her destructive acts towards Hatter's truck, even though she was handcuffed at the

time, demonstrates beyond cavil that she had not been completely restrained. Plaintiff has not cited a case which would demonstrate that it was clearly established in December, 2001, that an officer violates the Fourth Amendment by using force to bring a suspect to the ground, in order to prevent her from resuming her vandalism of the private property of another.

Nevertheless, Plaintiff argues that the evidence raises a genuine issue of material fact concerning the question whether the Fourth Amendment right she relies upon herein was clearly established, because, after a post-incident investigation, Springfield found that Emmel had violated the use of force policy for its Police Department.  It bears emphasis, however, that the right must be clearly established at the time the alleged constitutional violation occurred.  Estate of Owensby v. City of Cincinnati, 414 F.3d 596, 602 (6th Cir. 2005).  Simply stated, after the fact conclusions by Springfield concerning Emmel's compliance with its use of force policy do not demonstrate that a constitutional right had been clearly established before the incident giving rise to the investigation.

Accordingly, the Court concludes that the evidence fails to raise a genuine issue of material fact as to whether the particulars of Plaintiff's Fourth Amendment right to be free from an unreasonable seizure through the use of excessive force had been clearly established before December 15, 2001.  Therefore, it sustains the Defendants' Motion for Summary Judgment (Doc. #8), as it relates to the Plaintiff's federal law claim against Emmel.

Herein, the Court has concluded that all Defendants are entitled to summary judgment on Plaintiff's federal law claims.  The Court has not, however, addressed her state law claims, since the Defendants did not move for summary judgment on

- 12 -

them.  In accordance with the supplemental jurisdiction statute, this Court possesses the discretion to decline to continue to exercise such jurisdiction over a plaintiff's state law claims after her federal law claims have been dismissed.  28 U.S.C. § 1367(c)(3).  See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial … the state claims should be dismissed as well"); Brandenburg v. Hous. Auth. of Irvine, 253 F.3d 891, 900 (6th Cir. 2001) (District Court appropriately declines to continue to exercise supplemental jurisdiction over state law claims, after the federal law claims have been disposed of on summary judgment).  This Court exercises that discretion in this litigation and declines to continue to exercise supplemental jurisdiction over Plaintiff's state law claims.  Accordingly, the Court directs that judgment be entered, in favor of Defendants and against Plaintiff, dismissing her federal law claims with prejudice and her state law claims without prejudice.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

September 23, 2005

                                                /s/ Walter Herbert Rice
                                     WALTER HERBERT RICE, JUDGE
                                     UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.